Thank you very much. May it please the Court, my name is Cameron Baker. I represent Defendant Appellants Deputy Stephanie Nelson and Deputy Christopher Thomas. You might need to raise the microphone up because you're tall. I don't know if there's a way to do that. Can you hear me now? That's better. Okay. The Appellants asked this Court to reverse the District Court's denial of qualified immunity as to the two claims that are at issue. The two claims both involve the Fourth Amendment. I think both of these are very important issues because they involve practical police enforcement. The first issue is whether an officer investigating a report of a shooting can contact a witness, remain at the witness's front door after the witness asks her to leave, and ask her, you know, attempt to gain information about information that the witness has reported. The witness called and said, hey, I know about the shooting, reported the shooting, and so they're responding. And it's undisputed that the incident was a serious incident involving an assault weapon and possibly injured parties. So the question is whether that's a seizure under the Fourth Amendment. And the answer, I think, is clearly no. And the District Court denied summary judgment to Deputy Nelson on that issue. Related in that particular issue is whether the plaintiff ever pled a verbal seizure claim. There is nothing in the complaint that indicates there was a verbal seizure claim pled. It was only raised at summary judgment. In fact, they are the ones who brought summary judgment on behalf of that claim. So the complaint does have the facts. I mean, you may say that it doesn't have merit, this claim. You just started with the idea that this doesn't have merit. But the complaint does talk about the facts of they came to my porch, I asked them to leave, they wouldn't leave. Why isn't that, I mean, as we were just talking about in the last case, a complaint has to state the facts. It doesn't have to have the right legal argument that goes with them. If we imagine that this is a legal claim, why aren't those facts enough to state it? Because those facts don't establish a claim under, as a matter of law. Okay, but that's a merits argument, right? Your Honor, if I may. I mean, because the issue is whether or not a reasonable person would have felt unable to terminate the contact. There are no allegations about that. And in fact, if you look at the relevant part of the complaint, they said that she was seized and then they dragged her out of the house. And in fact, there are factual allegations about Deputy Nelson grabbing. Counsel, were you prejudiced at all by the claim being raised at the late hour after the close of discovery during summary judgment? Yes. I mean, I think you can, if you're looking at the record of the deposition, there were definitely many more questions I would have asked Ms. Pichot that would have developed. Did she feel at any point in time she was unable to leave? Counsel, if we were to conclude, and this is hypothetical, but if we were to conclude that qualified immunity should apply because there's no clearly established law, would we have to decide definitively the pleading question or the question of excessiveness? That's a very good question, Your Honor. I think this Court has an obligation to avoid constitutional issues, if it can. The whole thing is a constitutional issue, so there's no statute or common law that would answer the question, so I'm not really sure I understand your answer. What I'm saying is generally if this Court has an alternative ground to resolve an issue that does not involve making a ruling on the merits of a constitutional claim, it goes and uses that alternative ground. But saying that there's no clearly established law would not be answering the constitutional question. I'm not sure why you're fighting this. I just don't understand. I guess you're saying that theoretically there's a problem with it, but I don't understand why. No, I'm not. I mean, in my view, what the District Court should have done is the District Court should have said, this claim is not pled, but nonetheless, I reached the merits and I determined that there's no, it's not clearly established that this violated the I didn't understand that logic. The District Court said it's not pled, so therefore I can't grant summary judgment on it. I don't understand that. Neither do I, Your Honor. If it's not pled, then maybe it just doesn't exist. Well, it's also very interesting, I think, as a matter of practical pleading. Parties often, if you call, you designate an ADA cause of action, but there are multiple ADA violations, each of which is a separate cause of action or a separate right. So I don't understand how the District Court said. It could lead to a lot of complications in the District Courts if you could come up with an unpled claim at summary judgment. The District Court could grant summary judgment on everything else but then have to continue because this claim was not pled. That rule makes no sense to me. It did not make sense to me, either. Have we had any case law suggesting that or is there any precedent about that? No, we've established several, presented to the Court with several decisions where the Court has granted summary judgment as to claims that were not pled, but it normally comes up in the reverse. It normally comes up when the defendant is attacking a broader claim and the plaintiff tries to add it at summary judgment. Counsel, if I may ask you to address the other defendant's situation and specifically to ask you the following. At this procedural place where we are, we have to assume the truth of, you know, the plaintiff's contentions. And the plaintiff says there was no push, there was no touch. And if that is true, why couldn't a reasonable fact finder conclude that Nelson grabbed the plaintiff without any reason to do so? Your Honor, you're now talking about Deputy Thomas's? Yes, I'm sorry. I used the wrong name. No, no, I understood. So the situation in this one, again, it seems to me a very important question of practical and efficient police practices. At this point in time, Deputy Thomas is approximately 100 feet away. He hears the two women talking. He turns around. He's going towards them. He cannot see. It's undisputed. He cannot fully see Ms. Pachoke. He doesn't know what Ms. Pachoke's doing. And for purposes of this appeal, we've accepted that Deputy Nelson initiated the physical confrontation. So the two women are struggling. He's coming to the scene. He doesn't know why Deputy Nelson has done what she has done. But he can't see Ms. Pachoke. He cannot determine that she did or did not pose a threat. All he knows is that his fellow officer has initiated this conflict. Can I pause you there? It wasn't clear to me that he knew that Nelson had initiated. But are you saying he did know that? No. Ms. Pachoke testified that. And so we have to accept that. I understand that as to Nelson. So for the claim with Nelson, she alleged that Nelson started it. And we take that as true. But I hadn't understood that you were conceding that Thomas knew that. Because he wasn't there when that happened, maybe. But maybe you are conceding that. That would be a different thing than what I had understood. I think we have to concede that. That he knew that, even though he was somewhere else. Well, he was turned towards them and walking towards them. So you can sort of see this in the video. The video actually, to the extent you can see it, shows the same perspective. Roughly, that's from basically the perspective that Thomas would have seen. So the way the screen door comes out like this. So if Ms. Pachoke is behind the screen door, Deputy Nelson would be here. So he could see Deputy Nelson. So I think in that case, you have to concede that he could see Deputy Nelson. He could see if she had her shoes open. So then that's different. Okay. So then if he knew that Nelson initiated the physical contact, then why does he have any reason to think that there's a reason for arrest here or anything else? Because all he knows about the plaintiff at that point is she's a witness. She's asking Nelson to leave the porch. If Nelson is the first attacker, what do we think that he could reasonably assume that would allow him to use force? Well, I think, Your Honor, it's kind of jumping ahead. You've talked about arrest. The question is not whether he's going to arrest her at this point. No, it's whether he can grab her. Okay. So what was the basis for force? The question is whether he can stop the fight between the two women. The question is... But there was no fight. If you accept the facts in the light most favorable to the plaintiff, that's what started this conversation. If he sees either nothing or if he sees something like Nelson grabbing the plaintiff first, then why can he grab her? Why wouldn't it be just objective reason that she's trying to arrest her? And then he's allowed to assist her in arresting her. That's the collective knowledge. Yeah, the collective knowledge. But that's not looking at it in the light most favorable to the plaintiff. Well, it is because all I see as plaintiff is that Thomas saw them yelling and then Nelson starts seizing Ms. Pachaudi, right? So he doesn't know what the conversation is about. All he sees is yelling and then her grabbing. What her hands are doing. He doesn't know anything. What's going on? He only has an obscure view of Ms. Pachaudi. So he cannot determine... So the question is, under the collective knowledge, he can assume that she's doing right. I mean, I think that's the assumption. I don't think the case law supports that. I mean, you can't always assume as an officer that every level of force another officer is using is appropriate, right? Because you can use excessive force after someone else uses excessive force. It's not automatically if someone's shooting, you can start shooting too, if there's no reason to be shooting. That's what Your Honor is... We're not talking about that. We're talking about all that Deputy Nelson is using is her hands, right? Yes, but that could be excessive force too. If someone is standing on their own porch and says, I'd like you to leave, and the officer starts pushing or shoving or doing something, that is not... I mean, why is that appropriate? Again, viewing the facts in the light most favorable to the plaintiff. So why would one assume that there's an arrest or anything else in this particular situation? All right. So the difference here is that Thomas is not there. If Thomas is sitting right there... No, but he's going towards them and he's seeing it, and... He cannot see it, Your Honor. Well, this is what we were just talking about. I didn't think he could see it, but then you just told me he could. He could see Deputy Nelson. He could not see all of Ms. Pichot. Okay. So then why did you say that he knew that Nelson was the first attacker physically? Because I didn't think that was true. If he can't see Pichot, he doesn't know. But you said he does know. So now we have to assume he does know that Nelson is the attacker. At that point, why doesn't he grab Nelson instead of grabbing Pichot? Because he doesn't know why Nelson's initiated it. He doesn't have sufficient information. So again, let's just plug it. So your position is that if an officer has insufficient information, they can basically do what they will? I mean, rather than try to figure out what's going on? I mean, that's a, I think, unusual position. Your Honor, there's two women who are fighting, okay? Not according to the plaintiff. There's one person who's fighting, and that's Nelson. So that's why I keep coming back to the procedural posture of this case, not to who might ultimately win or lose if it goes forward. So I believe that the district court, to the extent it found things, talked about a physical confrontation. There was a physical confrontation between the two women. Okay, well, it doesn't matter what the district court found, because we're de novo. So tell us what the basis for that is. The fact is that the two women, there was not resolve. Ms. Pichot was resisting. That's why I keep coming back to the principle that we must look at the facts in the light most favorable to the plaintiff. And according to Thomas, he saw a plaintiff engage or push Nelson. But she says, I never pushed anybody. I did not do that. And so for purposes of our analysis, we have to assume that Nelson was the only pusher, and that Thomas could not have seen plaintiff push, because she didn't. That's why I'm trying to get you to focus on assuming that to be true, then what? I'd like to reserve my time. While we're asking questions, you need to answer. No, no, I did. I just wanted to mention that. Okay, so I guess maybe I'm not being entirely clear. So the contention from Deputy Thomas is that he is coming up the scene. It's a classic Graham situation, a rapidly evolving scene. He's coming across it. He can't, he's still coming up. He doesn't know why Nelson has initiated the contact. Now that's, I think, because Ms. Pichot testified there was, that Nelson did it. I have to accept that. So she sees that Deputy Nelson has initiated, he doesn't know why. Under the collective knowledge, he's entitled to believe that she had a reason. He had worked with her. Now again, to me the question is, did he see anything that led him to believe that she was not using force appropriately? He didn't see her whip out her baton and start hitting Ms. Pichot. He saw her just using her hands, right? So is it your position that just using your hands can never be excessive force as a matter of law? Because that seems to be your position. No, it's not, Your Honor. But when force is authorized, you can use minimal force. And using of hands has traditionally been considered by this Court as minimal hands. Sorry, minimal force. So she's just using minimal force. He goes up to use minimal force to stop the fight. He's got to make a decision. How do I stop this fight? He can't let the two... What is your answer to if he thinks, if he can see, because you told me he could, if he can see that it is Nelson who is starting this fight, then why doesn't he intervene by grabbing Nelson instead of grabbing Pichot? It's Pichot. Pichot. Because he doesn't know why Deputy Nelson has initiated. He doesn't know who's right or wrong in this situation. The question is, if he doesn't know who's right or wrong, why is he... You're supposing he's required to assume that Deputy Nelson is wrong and he has to stop Deputy Nelson. He just needs to stop the fight in the best, quickest way and without the minimal injuries to both people, which is what he did. You would agree it would be odd if we had a rule that any time an officer comes upon another officer trying to make an arrest of another person, the officer has to inquire first about whether the legitimacy of the arrest before they could intervene to help the other officer, right? Yes, I would concede that. Has any case said that? That the officer has to inquire whether or not an arrest is valid before he can intervene to help another officer? Yeah, those are the cases that I cited from out of the circuit. I think your cases said things like you can assume that they announced themselves. No, that was... Yeah, but it was essentially that they had done what they were supposed to do before they initiated. So if they come up upon a fight and they're shooting... That case was a shooting case, right? And they don't need to stop and say, hey, why are we shooting? What's going on here? They can start shooting back. That's the whole purpose of the collective knowledge doctrine, is that officers can rely on the other officers to know what their knowledge is and that they're doing the right thing. I mean, that's a practical fundamental of how our police system works. You have to rely on the other people doing what they're supposed to be doing. Maybe if he didn't know because he couldn't see, that would be a more persuasive argument. But if he knows that Pachote has been approached because she is a witness, she is not being accused of anything, and he can see enough of the interaction to hear that all she's saying is, I want you to leave, and then Nelson starts attacking her, you're saying that that is a reason to arrest Pachote, and he can help. You keep using the word arrest. Well, okay, but that's what you just told Judge Bumate. He can assume that she's being arrested. It was based on his example, but the issue here is not whether he could arrest her. But you said that earlier in your argument. You said he would assume that Nelson is in the process of arresting the plaintiff. I'm sorry, if I said that... What do you think he should assume? That she's in the process of arresting Pachote. Well, so you said earlier. If Pachote said to her verbally, because there's no allegation that Thomas heard what was saying. All we hear is that they're yelling at each other. If Pachote said, yeah, it was me with the gun. I shot all those people. Don't you think Nelson had the right to arrest her right then? And then if she resisted, then it would have been a valid arrest, and it would have been valid for Thomas to help the arrest. Yes, and I think the other thing is if Pachote had done something, made a move with her hands or done something that indicated she was going to initiate something. But we have to take as true her statement that she did nothing. And you keep walking away from that. But in the procedural posture of this case, we have to assume the truth of everything that the plaintiff has said about her actions. And is there anything in this record that suggests that she was a criminal and not just a witness? No, but I think the only thing Your Honor keeps not wanting to accept maybe is that he can't see Ms. Pachote. He can't see. Or he can't hear what she's saying. She's partially obscured by the screen door. So he doesn't know what she's doing or saying. This is so confusing to me because he's facing them and he claims that he saw the plaintiff push Nelson. However, she denies that. So we have to assume that she did not push Nelson. She did not. So he could not have seen it because it didn't happen. So all he sees is people Maybe he sees nothing other than people shouting at each other which really doesn't necessarily give you a reasonable person the idea that he has to stop the person one of the people who's yelling. Or in the alternative, if he was facing them, he would have seen Nelson push first or push only. Be the only pusher. Again, I just don't understand the assertion that somehow he could assume that the plaintiff was a wrongdoer in any sense. I think what he's assuming, and I think he's entitled to assume, is that Deputy Nelson has a reason for what she's doing. Okay, so without Judge Bumate telling you to say arrest, what do you think he thinks he's doing? That she's, for whatever reason, she's a detainer. I would not use the word arrest because I don't think it's an arrest. But whatever reason it is, Deputy Nelson has decided that she needs to physically control and respond to something that Pacheco has done. Whether it's to arrest her, whether it's to search her, whether it's to move her out of the house. And so, do you have a case, I know you have a case that says we can assume they announced themselves, but do you have a case that says as soon as some officer is using force, that means that another officer can use equal force no matter what? I think, well, the closest I can give you is the White v. Pauly case where the court says there's no, and it's kind of a weird ruling by the Supreme Court, but it basically says there's no case that says an officer cannot rely on the other officer doing the right duty. Which is kind of how I would flip it on this. Again, we have to find a case that says what Deputy Thomas, if we're talking about qualified immunity here, what Deputy Thomas did was prohibited. Well, there are plenty of cases that say if a person is doing nothing to threaten nothing to cause a potential for arrest, that force is not permissible. We have a whole laundry list of cases like that. So, if we have to assume for purposes of our decision that the plaintiff did nothing other than stand there and yell, then those cases would apply. I would agree, Your Honor. If, and if, and only if, Deputy Thomas had a clear view of Ms. Pachote and knew exactly what Ms. Pachote did. Again, He claims to have. He claims that he saw her push. So, he claims that he saw her. So, again, maybe it's hard to visualize. But we have the screen door. We have Deputy Thomas here who he says he can fully see. So, if he saw Ms. Pachote, which to me, to be candid, yes, I believe that's exactly what happened. I believe that's what happened. Anyway, he would have been able to see her arms past the screen door pushing Deputy Nelson. Except she denies it and we have to think that is true. I've accepted that, Your Honor. Okay. I've accepted that. I've accepted that that didn't happen. I've accepted the fact that Deputy Nelson allegedly started the confrontation. But I think it's, the assumption here is that somehow Deputy Thomas knows what Ms. Pachote is doing. He does not know. He does not know whether she has posed a threat or not posed a threat. He's not, I mean, a clear case would be if he had, they were behind a wall and he runs around and he sees the two women fighting and he just jumps in and helps Deputy Nelson. Right? Because then he has no view. Here he has partial view. But he doesn't know what's going on. And he doesn't know why Deputy Nelson is an issue. So, can you tell us just what he would reasonably assume had happened that would justify force? I think I told you that Ms. Pachote has made some furtive motion or has done something that leads Deputy Nelson to believe that she's a threat and she needs to be controlled. So, you think the reasonable assumption is a physical gesture or something? Just explain a little bit more. Say what you mean. What is he assuming she did that justified force? Maybe she said, you know, Jimmy, come out here with a gun and let's attack these people. Who knows? He's entitled, in my view, and I think the case law bears it out, he's entitled to believe that she's doing the right thing. Absent. I agree. If there's some evidence that would preclude him from relying on it. Now, the district court acknowledged the critical question is what did Thomas know and when did he know it? And there's nothing in the record that establishes that he knew that Pachote was not a threat. That's the issue. And, in fact, the district court in its ruling went so far as to talk about post-arrest incidents as if they were significant to what he knew before he used force. And, again, he's got to use force to stop the fight. He can't sit there, I think Judge Bouventay said, he can't sit there and say, hey, tell me what's going on here, people. He's got to stop the fight before someone gets hurt. And he used the minimal force. Literally, the testimony is from Ms. Pachote is that he pushed her from behind. He didn't use an arm hold. He didn't use a baton strike. He didn't punch. He didn't kick. Well, that gets to a different point, I think. So, the question, in my mind, is if he's allowed to use force. This is not a case. The cases that your Honor spoke about, about not using force, is when the person is completely passive and you can't use force. The question is if he's allowed to use force, the force he used was minimal. And I think he's entitled to use force based on what he knew when at the time he used force. Okay. Let's hear from the other side. I'll still give you two minutes for rebuttal. Thank you. Good morning. May it please the Court. Pat Buolma on behalf of Tracy Pachote. Good morning. I want to address a couple things. First and foremost, there was an unlawful seizure claim that was pled in this case. And that's a fact. It was pled. The factual allegations that supported it were pled as well. What we're asking is, does a plaintiff have to divide up every piece and section of an unlawful seizure claim? And let's talk about, for example, excessive force. Excessive force claims come through this Court all the time where an officer uses baton strikes and a taser strike and a knee strike. Is there a separate claim for each one of those strikes? Of course not. Because the factual allegations are what support that single excessive force claim. You don't need to break up the excessive force claim into multiple claims. Well, let's cut to the chase with Nelson. What is the clearly established law that, in your view, would deny qualified immunity? It's really the Florida v. Jardines case and the United States v. Linden case where the courts first start talking about the knock and talk exception. Because that's really what's at issue here. What even gave her the right to go up to the door and knock? One of that is the license, the invitation to come up because she reported a crime. She comes up, but she's not suspected of a crime. So the license, the courts have said, are particular in scope. The license to come and talk to me. So the officer goes up 1 a.m., knocks on the door. She opens the door and she tells her in no uncertain terms, I don't want to talk to you. Get away from my house. And repeatedly says that. The officer continues to try to question her and she continues to say... I understand that. I'm looking for the clearly established law that says that is impermissible. Sure. So United States v. Linden, that's a 9th Circuit 2016 case where officers were standing outside of a hotel room knocking on the door demanding to talk to the person and the court there said that exceeded the scope of the license of the knock and talk. It's something that the court said that trick-or-treaters and Girl Scouts manage effectively every day and every year. So if someone tells you to leave, then you should leave. That is something that we expect our children to be able to manage. I don't understand how it's not clearly established for our officers to manage that same expectation license. And so as it turns, if I fully answer the court's question, those are the two cases that I'm relying on. In regards to the splitting up of the claims and if there was any prejudice, counsel said that he was prejudiced, but he got a police practices expert who wrote an opinion specifically on whether or not the plaintiff was seized on this issue. So there was no prejudice. Defense counsel anticipated the issue, hired a police practice expert who wrote a long opinion all on this issue about whether or not there was a seizure for staying on the porch too long. So there was no prejudice. He knew, or the defendant knew and was on notice about this issue. And then when we turn to excessive force, I think the court, I'd like to make one thing clear. One, there was some discussion that Thomas couldn't hear what they were saying. That's not true. He testified that he could hear what they were saying. He could hear Ms. Nelson telling the officer to get off of his porch. And what he claimed he saw was that she stepped out and pushed her. My client claims, which the court must accept, that she was standing in her doorway, talking, telling the person to leave, and that Ms. Nelson reached and grabbed, the same time that Thomas was looking and listening, that Nelson reached and grabbed and was pulling her by her ponytail by her hair and by her clothes out of her house. Thomas then runs in, goes inside of her house, pushes her out, and then he wrote in his police report, pulled her to the ground, and he landed with her knee with his knee on her back. That is an extreme amount of force for someone that Mr. Thomas has seen do nothing but essentially be a witness. That in and of itself is clearly established law of excessive force. That's an unprovoked attack. So you're saying that he could see her do nothing. Correct. Where is the support for that? It's two-part. That he said he heard the conversation between Deputy Nelson and Ms. Pacheau that he was, when he turned, he could hear her saying hey, get off of my porch, get off of my porch, get off of my porch. And then he says he saw, which means we're at the beginning of the incident here, he saw Ms. Pacheau come out and push her. But we don't believe that. We don't believe that, so we believe my client... But he says he saw. That's, I think, the key on page 791 and 792 of the transcript. He says he sees her standing in the doorway of her residence. They were three feet apart, and you know, I observed Ms. Pacheau push Deputy Nelson, but of course, for our purpose, that may be true. A jury may find that is true, but for now, we have to believe your client that there was no push, so he must have seen a non-push, but he says he saw. And so, but more importantly, he never says that he was partially obscured. He could see, right? This is in the transcript. He never mentioned not being able to see Ms. Pacheau. He saw her in the doorway. So if you take up that time sequence where he can hear Ms. Pacheau saying get off my porch, and then in her... He says he pushed her, but at this point, Ms. Pacheau says it different, right? Contradict says yes, I'm telling her to get off my porch, and then I'm just standing there. And it's Nelson who grabs her. So assuming that that is true, that it was Nelson who grabbed her, then that's...a jury could believe, well, Thomas didn't see Pacheau push Nelson. What he saw was Nelson just go and try to pull this woman out. So opposing counsel says that an officer has an ability to assume that proper procedures are being followed. And so that would be that Nelson wouldn't have done that unless there was a threatening gesture or something inside the house. So what is your response to that? What case says that's wrong? Every single case that exists in Granby Connor, an officer has to perceive the threat themselves. So if they're not perceiving a threat in order to justify force, they can't just...if some officer is beating a person with a baton, do they just assume, oh, we're supposed to be beating this person with a baton, or do they have to see the person actually resisting or doing something wrong in order to justify that force? Well, there may be some other situations. For example, in your situation, what if the officer who's using the baton says, this person is trying to kill me. They've got a knife or whatever. So it's maybe not see it, but there's other situations in which it would be reasonable, yes? Absolutely, Your Honor. If that was communicated to the officer, then the officer would be able to rely. What did the officer know at the time? Did Nelson turn and tell him, hey, she's got a gun, she's got a knife? No. He's seeing and hearing the conversation. He's seeing what's happening, and she's just...if you take my client's set of factors, she's just standing there. So he's seeing that. He's hearing that as he's closing the distance. So there's nothing that communicates to him that could justify force. And even when...there's not a fight. There's just his officer pulling her and her passively standing still. That does not justify force. So this is in a situation where he can assume that she's following proper procedure because he has his own perception to rely on, and she hasn't communicated anything to him. It would suggest essentially that any time an officer goes up and starts hitting someone, that any officer that's standing by and watching it can just say, well, I assume it was for a good reason. Even if they themselves are perceiving no reason to use force. So I think the court has been clear that for officers to justify force, they themselves...we talk about this a lot in deadly force cases. They themselves have to perceive the threat or rely on communication from another officer that would give them reason to believe that person is doing something. If, for example, he was walking up and maybe Nelson doesn't see it, but Thomas sees her reaching for a gun, then maybe he could use force because he saw something that even Nelson couldn't see. But he has to see it, hear it. One of his five senses has to be working in order for him to justify force. And especially because he's...let's be honest, he enters her home without a warrant. So it's not even a small crime that he has to have exigent circumstances with a felony, or he has to have a warrant to enter into that house. I don't think that's an argument you made, really, in your brief. Well, I mean, I'm just saying if we're taking this hypothetical of what would give him the basis to start using force inside someone's house and you asked an opposing counsel, well, what basis could he assume? Well, whatever basis he had to assume would have to be enough for him to be even able to enter the house to start using force in the first place. Because using force or detaining or arresting someone out in the street is significantly different than entering into their residence and arresting them. And they don't have a warrant. This is just...what he knows tells him he shouldn't use force. Let's just go over what he does know. He knows that she's a witness. He knows she's not suspected of any crimes. He knows that she's telling Deputy Nelson that she doesn't want to talk to her and that she needs to get off her porch. She knows that she's just standing there. He knows that suddenly Deputy Nelson attacks her. He knows that she's grabbing her. He knows that even though that Deputy Nelson's attacking her, pulling her hair, that she's just standing still. So under that set of facts, it's clearly... Does she say that? That she was just standing still with her arms out? Correct. Yes, she does. And that Thomas had to enter in, get behind her, and then shove her forward. And what about the argument that he has worked with Nelson for a long time and knows that she follows procedures? I mean, everyone can do something wrong. Just because the officer has always followed the law doesn't mean that in this instance, therefore she must have followed the law when he's watching her break the law. So what bearing does that have on anything? He's watching her break the law. You're not excused from breaking the law because before you followed it. So on your view of this, we ignore that it was obscured by the door? I mean, I didn't understand that he could see her with her arms down the way you're acting. Well, so, it's a temporal thing because he's closing the distance. He did testify he could see her on the doorway, that they were three feet apart, and that she was telling Deputy Nelson to leave. So all of those things are three things that he testified to. As he's closing the distance, because he's talking over because she's telling him to leave, he's getting closer. Presumably, a jury could say he's probably being able to see better as well as he's drawing closer. And so at this point, all of a sudden, he just sees Deputy Nelson grab this woman, grab her by the hair, and start pulling her out of her house. Well, he does claim he can see them when he says I saw the plaintiff push Nelson. And so we have to flip that because of the procedural posture, even if that turns out to be what a jury believes. So, I guess, I'm not sure that means that he could see that she wasn't moving or doing anything. But it does say that he couldn't see her pushing because she didn't push. Well, also, you know that she didn't push. You know why? Because right after they took her into custody, he put out a 415 disturbance of the peace. And then an hour and a half later, after he talked with Deputy Nelson, he switched it to a 243 assault on an officer. So based off of his contemporary perception of what was occurring, he put out over the air what he saw. It wasn't a battery, right? Because he said he saw a battery later at depot. But when he was actually putting it out over the air, he put out a 415, which is a disturbance of the peace, someone yelling, being loud. And then an hour and a half later, after he had concocted this story with Deputy Nelson, he switched it to a 243. So that shows you, in and of itself, that he never saw a push. That what he didn't say, he didn't put out over the air, you know, something like, oh, I see her going for a weapon or I see some sort of motion or anything. What he put out over the air, which is the truth, is he saw a woman witness at her home, in her doorway, telling a police officer to get off her porch. And we know from Duran versus City of Douglas that it doesn't matter how explicit you are towards an officer, even if it's rude, that is not a basis for force. And in fact, in that case, in Duran versus City of Douglas, the person cussed out the officer, flipped him off, was driving home. The officer followed the person home and waited for them to get home and then took him into custody. And the court said, you can't use this prior event to justify force later. If you wanted to arrest them then, you should have arrested them. And you can't use it as a basis for force. And this circuit, this nice circuit, said, it's clearly established law that attacking a person based off of expletive language is not a basis for arrest, for force, for anything. If the court doesn't have any other questions, then I'll rest and ask the court to affirm the district court. Thank you. Thank you very much. I just want to make a few points. I did cite two out-of-circuit court decisions that relate to assumptions. The Bland case, which I think you mentioned was the shooting case. But there was also Garcia versus City of Hope where again, they witnessed the subject yelling and refusing to command but yet, they were authorized to use force. Again, it's somewhat similar to this case. There was a lot of discussions of what could be seen and you asked the right question. He could not see Ms. Pacheco entirely. He did not know what she was doing. There was a reference to the officer has to see something before they use force. That is not true. That's the whole purpose of the collective knowledge doctrine. Officers are entitled to rely on the knowledge that other officers have to justify their actions. He knew going in, he was entitled to rely on what Nelson knew. I thought the collective knowledge doctrine related to things that were communicated to an officer. For example, one officer says there's a bank robbery and you need to arrest the guy in the red plaid shirt. You could rely on that but you can't just kind of assume that the person in the red plaid shirt is a bank robber. Are there cases saying that collective knowledge is sort of sub silentio? I think that's similar to Judge Friedland's question about whether seeing another officer use force without knowing more either verbally or visually or in some way that justifies force by the second officer. I can't give your honor a citation right now but I seem to recall reading cases where there was multiple officers involved. Not all of them heard things on the radio or observed things and they were all allowed to rely on what was known to the group as a whole. But because there was a communication in advance, right? I don't remember any case that didn't have communications about the basis for the action. I can't, like I said, I can't give you a citation right now. I will say the last thing I would want to respond to is how Deputy Thomas designated the call. His testimony was that was just a placeholder. He hadn't talked to Deputy Nelson yet so he didn't know what the exact story was. That's why he called it out as he did. It was just a placeholder. But would you agree that if he had seen some sort of dangerous conduct that he would have said something about that instead of saying disturbing the peace? He might have, but he didn't know. It just basically is a number that throws out. He can add it, change it. It has no significance. It doesn't mean anything in terms of what he can ultimately charge, what he can write in his report. It's just a placeholder to generate the system. You have to call out something so the system will then generate a report number. So it's a new, basically if you look at it, it's a new incident. So when he calls it out, the computer system says that there was an incident number assigned to Ms. Pachote's call. That was one incident. And when he called it out, that became another incident. So he's just triggering them administratively to create another incident. If the court has any other questions, I'd be happy to answer them. Thank you both sides for the helpful arguments. This case is submitted.
judges: GRABER, FRIEDLAND, BUMATAY